JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff, John Chesney, appeals the jury's verdict for the defense in his suit against defendant-appellee April Jowers. On December 10, 1999, at around 11:30 at night, defendant was driving home from her 3-11 shift as a nurse's aide in a nursing home. She had just bought her car, a 1986 Bronco, two weeks earlier and was giving three co-workers a ride home. As she tried to merge onto the freeway, she discovered that her car would not accelerate above 25 MPH. She then pulled onto the shoulder, tried to call her mother, and, after discussion with her passengers, decided to pull back into the slow lane and exit.
 {¶ 2} While defendant was proceeding in the far right lane at 25 MPH, plaintiff entered the freeway, which was at this point at least three lanes wide. Plaintiff testified that he was driving the speed limit of 60 MPH when he pulled into the second, or middle, lane to pass a white minivan. When plaintiff pulled back into the far right lane, his van struck defendant's Bronco in the rear. Plaintiff said that he never saw the Bronco, and at first, wondered whether he had hit a person. Then his van flipped on its side against the guardrail. He was pulled out of it by other motorists who had stopped to help.
 {¶ 3} Plaintiff was taken to Bedford Hospital and then transferred to the Kaiser Emergency Room at the Cleveland Clinic. Chesney's injury was not disputed, although his actual injury, a fractured sternum, was not discovered until several days after he was treated and released.
 {¶ 4} At trial, plaintiff presented a witness who had seen the accident. This witness had written out a police statement at the time of the accident, nearly three years before the trial. His testimony at trial differed somewhat from his statement; on neither occasion, moreover, did he mention the white minivan. He did testify, as had plaintiff, that the Bronco did not have its hazard lights on. The witness testified that he could not recall whether or not the Bronco's regular lights were on, although defendant testified that they were.
 {¶ 5} In his statement to the police, the witness indicated that he saw the Bronco before plaintiff hit it, and that he swerved as if to avoid the Bronco just before impact. In his testimony at trial, however, the witness testified that he did not see the Bronco until after Chesney hit it, but he admitted that his recollection of the events just prior to the crash was hazy. Nonetheless, the witness consistently stated that plaintiff swerved just before hitting the Bronco.
 {¶ 6} The case was tried to a jury, who found for defendant. The jury answered two interrogatories, the first of which asked whether defendant was negligent. Instructing the jury on the interrogatories, the court said that if the jurors found defendant negligent, then they were to proceed to the second interrogatory, which asked whether her negligence was the proximate cause of Chesney's injury. The court then stated, "[i]f you were checking no, again, you would go back to the defense verdict." Tr. at 251. The third interrogatory asked whether the jury found that Chesney was negligent. The court told the jury not to fill out the interrogatory which asked whether Chesney was negligent, if the jury found that defendant was not the proximate cause of his injury. Also instructing the jury on negligence, the court said:
"Negligence is the failure to use ordinary care. Every person isrequired to use ordinary care to avoid injuring another person * * *.
 Ordinary care is the care that a reasonably cautious person would useunder the same or similar circumstances. A person may be required by lawto do something or not to do something. Failure to do what is required bylaw is negligence, as is doing something the law prohibits.
* * *
The defendant, April Jowers, claims that plaintiff, John Chesney, wasnegligent. The plaintiff was negligent if he failed to use that care forhis own safety, which a reasonably cautious person would use in the sameor similar circumstances." Tr. at 235.
 {¶ 7} The court went on to instruct the jury that "[a] driver must not operate a vehicle at a greater speed than will permit him or her to bring it to a stop within the assured clear distance ahead.
"The assured clear distance ahead is the distance between the vehiclehe or she is operating, and a reasonable visible object in his or herpath of travel.
 It constantly changes, and is measured at any moment by the distancebetween the driver and any reasonably visible object in ahead of him orher, in his or her path of travel.
 A discernable object is a reasonably visible object. An object isdiscernable when it is visible or can be detected or perceived."
 {¶ 8} The instruction addressing defendant's potential negligence stated:
"A driver must not operate his or her vehicle at a speed so slow as toimpede or block the normal and reasonable movement of traffic * * *.
 Before you may find a driver negligent because of slow speed, you mustfind, by a greater weight of the evidence, that such driver was going ata speed that was so slow as to impede or block the normal and reasonablemovement of traffic, and that such slow speed was not necessary in theuse of ordinary care for the safety of such driver and others using thehighway.
 * * * Where a minimum speed limit is established on a controlledaccess highway, expressway or freeway, a driver of a vehicle must notoperate the vehicle at less than the minimum speed, which is 35 miles perhour in this case. A lower speed is negligence, unless necessary in theuse of ordinary care for the safety of such driver or other users of thehighway. Tr. at 240.
 If you find that defendant violated the slow speed statute, OhioRevised Code 4511.22, such violation constitutes negligence as a matterof law."
 {¶ 9} The jury found that defendant was negligent but that her negligence was not the proximate cause of plaintiff's injury; the jury did not, therefore, fill out the third interrogatory addressing whether it found plaintiff to be negligent.
 {¶ 10} After the jury was dismissed, plaintiff moved for JNOV, or, alternatively, a new trial, and claimed that the jury could not have understood the concept of proximate cause when it found defendant negligent but not the cause of his injury. The trial court denied both these motions and plaintiff appealed, stating two assignments of error.
"I. The trial court erred when it denied appellant's motion for a newtrial and directed verdict when there was no competent, credible evidencethat the appellee's negligence was not the proximate cause of any injuryto the appellant."
 {¶ 11} Plaintiff argues that no evidence supports any theory which would remove blame for the proximate cause of his injury from defendant. He claims that but for defendant's driving under the legal limit on the freeway, he would not have been injured. A viable theory exists, however, that plaintiff's own negligence was the proximate cause of the accident.
 {¶ 12} The witness testified and stated in his police report that plaintiff swerved to avoid hitting the Bronco. This testimony contradicts that of plaintiff, who claims he never saw the Bronco at all before he hit it. Additionally, the witness's police statement, made at the time of the accident, recorded that plaintiff had "approached the [disabled] car in high speed and upon noticing the status of the slow moving vehicle tried to move left, and in doing so may have hit the other vehicle * * *." At trial the witness testified that plaintiff was driving the speed limit, and plaintiff himself testified that he was driving the speed limit.
 {¶ 13} His speed, however is not the issue. What is critical is whether he swerved back into the right lane just before hitting defendant. The jury could have determined that the witness's police report about swerving was more accurate than plaintiff's admittedly hazy recollection on the day of trial. The jury also could have concluded that plaintiff's testimony was self-serving and therefore worthy of less weight than that of the witness.
 {¶ 14} Further, plaintiff himself testified that he had just passed a white minivan and was pulling back into the far right lane when he struck the Bronco. The jury could have determined that carelessness in this lane change caused the accident.
 {¶ 15} The court gave the jury instruction addressing assured clear distance. Because the witness could not remember whether the Bronco's illuminating lights were on or not, plaintiff provided the only testimony that the Bronco's illuminating lights were not on. The jury could have determined that this testimony was also self-serving and that plaintiff was at fault for failing to keep an assured safe distance to avoid hitting it. The trial court did not err, because credible evidence supports a finding that plaintiff was 100% responsible for his injuries and that the failure of defendant's car to accelerate was not the proximate cause of the accident.
 {¶ 16} For his second assignment of error, Chesney states:
"II. The trial court erred when it denied appellant's motion for a newtrial and directed verdict when it was clear that the jury's finding onproximate cause was logically inconsistent with the evidence presented attrial and their finding of the negligence of the appellee."
 {¶ 17} Plaintiff argues that the jury's determination that defendant was negligent requires that her negligence must have been the cause of his injury. He points out that defendant did not dispute that the accident was the cause of his fractured sternum: she did not present any evidence and did not argue that his injury had any other cause.
 {¶ 18} An appellate court reviews a motion for judgment notwithstanding the verdict pursuant to Civ.R. 50(B) using a de novo standard of review. Bradley v. Cage, Summit App. No. 20713, 2002-Ohio-816. The court weighs the evidence in a light most favorable to the nonmoving party. If the court finds substantial evidence supports the prevailing party and that reasonable minds could differ on the conclusion, the motion for JNOV is denied.
 {¶ 19} The court approaches a decision concerning a new trial differently. "[I]n ruling on a motion for a new trial, the trial court is afforded wide discretion in determining whether a jury's verdict is against the manifest weight of the evidence, for the court must ensure, in its supervisory capacity, against a miscarriage of justice. * * * The trial court may examine the sufficiency of the evidence in so doing. * * * Where the trial court's decision on the motion for a new trial involves questions of fact, as in this case, [the appellate court's] task as a reviewing court is to `view the evidence favorably to the trial court's action rather than to the jury's verdict.'" Osler v. Lorain (1986),28 Ohio St.3d 345, 351, quoting Jenkins v. Krieger (1981),67 Ohio St.2d 314, 320, citations omitted.
 {¶ 20} A defendant is liable to an injured plaintiff if the plaintiff can prove defendant was negligent, defendant had a duty to plaintiff and breached that duty, and the breach was the proximate cause of his injury. Menifee v. Ohio Welding Products (1984), 15 Ohio St.3d 75,77.
 {¶ 21} In the case at bar, the jury was instructed that if it found that defendant drove below the legal minimum speed limit, that is, 35 MPH, then it had to find her negligent as a matter of law. Defendant herself testified that she was driving 25 MPH, 10 miles below the legal minimum. The jury was required, therefore, to find her negligent because of her slow speed on the highway.
 {¶ 22} The jury found, however, that this negligence which it was required to find given the facts in the case, was not the proximate cause of plaintiff's injury. Because it made this finding, the jury did not answer the question concerning whether plaintiff was negligent. Given the jury instructions, however, it is likely that the jury considered plaintiff liable for his own injuries by failing to follow the law concerning assured clear distance. Reasonable minds could conclude that although defendant's slow operation of her car constituted negligence according to the law, his failure to leave an assured clear distance between his car and hers was the sole cause of the accident.
 {¶ 23} It is possible, therefore, to harmonize the jury's general verdict with its answers to the special interrogatories. "The answers of a jury to special interrogatories will not authorize a judgment different from that authorized by a general verdict, where such answers can be reconciled with the general verdict." McNees v. Cincinnati St. Ry. Co.
(1949), 152 Ohio St. 269, paragraph one of the syllabus. If a court can harmonize the general verdict with the special interrogatories, it must do so. Lathan v. Pennington (Nov. 18, 1999), Cuyahoga App. No. 75198.
 {¶ 24} Further, defendant failed to request that the court resolve the alleged discrepancy in the verdicts before the jury was dismissed. By failing to ask for clarification when the jury was available to resolve the question, defendant waived his right to question the verdict now. After the jury was dismissed, the court asked counsel whether either of them wished to poll the jury. They both declined. The court then told the jury: "Ladies and gentlemen of the jury, thank you very much for your service. Jim will take you into my chambers and I'll answer any questions you may have." Tr. at 262.
 {¶ 25} The court proceeded to ask both counsel if they wished to put anything on the record at that point. It was not until then that plaintiff's counsel asked for a JNOV because he believed that the jury's verdict was "illogical and inconsistent." The counsel and court discussed the issue, and the court offered plaintiff's counsel the opportunity to brief the issue. Court was then adjourned. Plaintiff's counsel did not ask that the jury be recalled to clarify the interrogatories while the jury was still available. Rather, he chose to raise and brief the question after the jury was discharged.
 {¶ 26} Even in cases in which the discrepancy between the general verdict and special interrogatories is not reconcilable, failure to raise an objection before the jury is dismissed results in a waiver of the objection. In a similar case, this court noted, "[a]lthough we recognize that there is clearly an inconsistency between the general verdict and the jury's interrogatory answers, defendant waived any error in the inconsistency by failing to object before the jury was discharged. An objection to an inconsistent answer by a jury to an interrogatory is waived unless the party raises the objection prior to the jury's discharge." Avondet v. Blankstein (1997), 118 Ohio App.3d 357, 368. By requesting a JNOV after the jury was discharged, rather than requesting a clarification while the jurors were still seated, plaintiff waived his objection. This assignment of error is without merit.
 {¶ 27} The judgment is affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Anthony O. Calabrese, JR., J., concurs.
Michael J. Corrigan, P.J., concurs in judgment only;